UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| CASEY K., by NORMAN and MARI K., Individually and as his Parents and Next Friends, ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Case No. 04-2128 |
| ST. ANNE COMMUNITY HIGH SCHOOL DISTRICT NO. 302 and ILLINOIS STATE BOARD OF EDUCATION, ) ) ) ) | |
| Defendants. ) | |

_____

OPINION
_____

Plaintiffs brought this action under the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1401 *et seq*., against Defendants St. Anne Community High School District No. 302 (District) and the Illinois State Board of Education (ISBE). On August 14, 2006, this court entered judgment in favor of Defendants on Plaintiffs' claims. This matter is now before the court on the District's Verified Bill of Costs (#124), Plaintiffs' Motion for Civil Contempt & Objection to Verified Bill of Costs (#128), and the District's Motion for Repayment of Money Paid During Stay Put (#130). The court rules as follows.

PROCEDURAL BACKGROUND

Plaintiff Casey K. is eligible for special education services. During Casey's eighth grade year, his parents placed him in the Acacia Academy, a private school, because they did not believe the St. Anne Elementary School could provide him with the educational services he was entitled to

under the IDEA.  Plaintiffs then sought a due process hearing under the IDEA in an effort to make the elementary school district pay for the private school placement.  The parties settled the dispute on March 4, 2004, and agreed that Casey could stay at Acacia at the expense of the elementary school district until May 12, 2004, when Casey would reach the age of 15 and become the responsibility of the high school.  This agreement was incorporated into an Individualized Education Plan (IEP) on March 25, 2004.

When Casey turned 15, the District issued a new IEP for him as it was entitled to do because it is a separate school district from the elementary school.  The IEP found that Casey could be educated at the local high school.  Plaintiffs challenged the new IEP and again sought a due process hearing under the IDEA.  Pursuant to 20 U.S.C. § 1415(j), Plaintiffs also invoked the IDEA's stay put provision to allow Casey to remain at Acacia during the pendency of the proceedings.  Both parties filed motions for temporary restraining order seeking a determination as to the appropriate placement for Casey pending resolution of administrative and judicial proceedings.  On August 13, 2004, Judge Joe Billy McDade entered an order (#11) finding that Acacia was the appropriate stay put placement pursuant to § 1415(j) of the IDEA.  The District appealed this decision.

Subsequently, on October 19, 2004, following the due process hearing requested by Plaintiffs, Dr. Marie Bracki, an Impartial Hearing Officer (IHO), determined that Casey's appropriate educational placement was in the District, thus changing Casey's educational placement from Acacia School.  On January 8, 2005, Plaintiffs filed an Amended Complaint (#22) seeking to overturn the IHO's decision.  Plaintiffs then filed a motion for temporary restraining order (#33) to enforce the stay put order issued by Judge McDade which required placement of Casey at Acacia at public expense during the pendency of this matter.  This court granted the motion for temporary

restraining order on February 17, 2005. No appeal was taken from this order. Subsequently, the Seventh Circuit Court of Appeals affirmed Judge McDade's determination that Acacia was the appropriate stay put placement. See Casey K. v. St. Anne Comm. High Sch. Dist. No. 302, 400 F.3d 508 (7th Cir. 2005). Thus, Casey remained at Acacia during the pendency of these proceedings.

The parties filed cross motions for summary judgment for review of the decision of the IHO finding the District to be the appropriate placement for Casey. On August 14, 2006, this court granted Defendants' Motion for Summary Judgment, determining the District to be Casey's appropriate placement pursuant to the IDEA. This court allowed Plaintiffs thirty days to file an appropriate motion regarding travel expenses incurred during the stay put placement for which Plaintiffs alleged they were owed reimbursement. On September 5, 2006, this court entered an Opinion (#127) dissolving the stay put injunction based upon the court's decision on summary judgment.

## BILL OF COSTS

In its Bill of Costs (#124), the District seeks $3,683.36 for the deposition costs of Dr. Richard Van Acker, Jean Kulczyk, and Dr. Rudy Lorber. The District has attached the invoices from M & M Reporting, Inc. for these depositions. Federal Rule of Civil Procedure 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Pursuant to 28 U.S.C. § 1920 (2), costs may be taxed for the "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." This court agrees with the District that these depositions were necessary to the litigation. The court referenced the testimony of Dr. Van Acker, Dr. Lorber, and Jean Kulczyk extensively in its Opinion ruling on the parties' motions for summary judgment.

In their Objection to the Bill of Costs (#128), Plaintiffs assert that this court should nevertheless decline to award costs due to "the District's pattern and practice of refusing to comply fully with . . . this Court's Orders regarding transportation reimbursement." However, as this court discusses below, the deduction of $261.65 for unpaid transportation costs is a sufficient remedy rather than barring costs in their entirety. Accordingly, the District is awarded $3,421.71 in costs.

## MOTION FOR CIVIL CONTEMPT

On September 6, 2006, Plaintiffs filed their Motion for Civil Contempt (#128). The basis for Plaintiffs' Motion for Civil Contempt is their assertion that the District failed to pay the entirety of transportation costs required pursuant to the stay put order. Judge McDade, in his order of August 13, 2004, ordered the District, as part of the stay put placement, to pay full transportation expenses for transporting Casey from St. Anne to the Acacia school during the pendency of these proceedings. Plaintiffs indicate that to assist the District during the summer of 2005, the parents of Casey agreed to drive him to school at an agreed mileage rate until the District arranged bus transportation for Casey's extended school year services at Acacia. Plaintiffs indicate that a letter was faxed to the District on July 7, 2005, requesting reimbursement in the amount of $739.20 for travel expenses. When the reimbursement was not received, three more requests were made for reimbursement on August 14, October 11, and October 24, 2005. Plaintiffs indicate the Defendant "subsequently paid only a part of the amount due and owing" and claimed that "other monies [the District] claimed the Plaintiffs owed the District prevented it from paying the full transportation reimbursements."

In its Response (#132), the District indicates that it deducted $261.65 from Plaintiffs' transportation reimbursement for textbooks which Plaintiffs had failed to return. The District has

submitted the affidavit of Kathleen Hickey, the Superintendent of the District. Hickey indicates that Casey's mother requested that the District provide Casey with certain textbooks so he could familiarize himself with the classes he would be taking at St. Anne High School after the IHO ordered that Casey be placed at the St. Anne High School for the second semester of the 2004-2005 school year. The District supplied these textbooks to Casey, but Casey decided to continue attending Acacia and to file an appeal of the IHO's decision to this court. The District therefore requested Casey return the textbooks to the District. The District further indicates that it paid $477.55 of the requested $739.20 in transportation charges on November 2, 2005, deducting $261.65 for the unreturned textbooks. A photocopy of the check for this amount is attached to the Response. The District indicates that the textbooks were not returned until August 25, 2006.

The District indicates it is willing to deduct the $261.65 from its Bill of Costs if the court is so inclined. Because the District concedes Plaintiffs eventually returned these textbooks, the court will deduct the $261.65 from this court's award of costs to the District. The District further indicates that it has already paid $102,852.76 in tuition and transportation costs pursuant to the stay put order. This court finds that the District's failure to pay the $261.65 is insufficient to warrant a finding of contempt in light of the relatively insignificant amount in comparison to the total paid by the District and in light of the District's reason behind deducting this money. Accordingly, Plaintiffs' Motion for Civil Contempt (#128) is DENIED.

MOTION FOR REPAYMENT OF MONEY PAID DURING STAY PUT

The District has also filed a motion seeking repayment of the money it expended for transportation and tuition for Casey's education at Acacia during the pendency of these proceedings. In the previous appeal in this matter of the stay put placement, the Seventh Circuit stated that it "is

an open question whether, even if the parents lose their challenge, they must reimburse the public entity for the expense of the private-school placement to which the child, it turns out, was not entitled." Casey K., 400 F.3d at 510. While the Seventh Circuit has not yet spoken on this issue, the Northern District of Illinois in the recent case of Aaron M. v. Yomtoob, 2003 WL 22836308 (N. D. Ill. 2003) denied reimbursement to the defendant school district under circumstances similar to the instant case. The court agrees with the reasoning therein.

The IDEA provides for what has been termed stay put placement, which allows parents to keep a child in his/her existing educational placement until the dispute with the school district as to the appropriateness of that placement is resolved. See 20 U.S.C. § 1415(j). The IDEA is silent on the issue of reimbursement, but provides that the district court may "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii); see Yomtoob, 2003 WL 22836308 at *3. The United States Supreme Court has interpreted this language to allow reimbursement to parents from the school district for expenditures on private school education if the court determines that a private school placement is the appropriate placement rather than the district's proposed IEP. Town of Burlington v. Department of Educ., 471 U.S. 359, 369 (1985). The Supreme Court has further stated that if parents unilaterally change their child's placement during the pendency of review proceedings, they would be "barred from obtaining reimbursement for any interim period in which their child's placement violated [the stay put provision]" if the court determines the IEP proposed by the school district was appropriate. Burlington, 471 U.S. at 373-74. Neither of these situations is present in the instant case. The money expended by the District was for Casey's education at Acacia, his stay put placement.

After considering many of the same arguments advanced by the District here, the court in

Yomtoob found that "parents who maintain their child's stay-put placement should not be required to reimburse a school district for stay-put expenses even if the proposed IEP is found to be appropriate." Yomtoob, 2003 WL 22836308 at *7. The court recognized that "requiring parents to reimburse a school district that ultimately prevails in a challenge to its proposed IEP would make parents without financial resources hesitant to take advantage of the stay-put protections." Yomtoob, 2003 WL 22836308 at *7. This court agrees with the Northern District that such a result would "undermine the IDEA's fundamental policy goals of providing a free appropriate public education for disabled children and ensuring that their rights and the rights of their parents are protected." Yomtoob, 2003 WL 22836308 at *7. See also District of Columbia v. Jeppsen, 2006 WL 1992628 at *3 (D. D. C. 2006) ("requiring parents to reimburse school districts for tuition and other expenses paid to private schools under the stay-put provision is wholly inconsistent with the intent and spirit of the provision itself"). Accordingly, the District's Motion for Repayment of Money Paid During Stay Put (#130) is DENIED.

IT IS THEREFORE ORDERED:

(1) The District is awarded costs in the amount of $3,421.71.

(2) Plaintiffs' Motion for Civil Contempt (#128) is DENIED.

(3) The District's Motion for Repayment of Money Paid During Stay Put (#130) is DENIED.

ENTERED this 21st day of December, 2006.

s/ Michael P. McCuskey
MICHAEL P. McCUSKEY
CHIEF JUDGE